UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN LEE MATTHEWS,<br><br>    Plaintiff,<br><br>    v.<br><br>E. BLACK, et al.,<br><br>    Defendants. | Case No. 13-cv-02760-JD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 38, 51, 52, 59, 62 |

Plaintiff, a state prisoner proceeding pro se, has brought a civil rights action under 42 U.S.C. § 1983. The amended complaint alleges claims against defendant correctional officers Puckett, Bonilla, Urena, and correctional sergeant Black for retaliation and deliberate indifference to plaintiff's safety, and also alleges that Bonilla and Urena used excessive force. Defendant Puckett has moved to dismiss for failure to state a claim,[1] and the remaining defendants have filed motions for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. The motions are granted.

**I.  MOTION TO DISMISS**

**A.  Background**

In the amended complaint, plaintiff states he was transferred from Corcoran Prison to Salinas Valley State Prison ("SVSP") on September 8, 2011, and was temporarily placed in Administrative Segregation ("Ad. Seg.") due to lack of bed space at SVSP at that time. On September 21, 2011, plaintiff continued to be held in Ad. Seg. due to confidential information. In

---

[1] Puckett also argues in the motion to dismiss that plaintiff failed to exhaust his administrative remedies. This aspect of the motion to dismiss is dismissed without prejudice in light of *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014), because the exhaustion deficiencies are not plain on the face of the complaint.

1  October 2011, plaintiff filed several inmate grievances regarding his legal and personal property that was not returned following his transfer.

On December 1, 2011, a classification committee approved plaintiff's release from Ad. Seg. to general population. On December 1, 2011, plaintiff was taken from his single cell in Ad. Seg. to a double cell in general population. Defendant Puckett was escorting plaintiff to the double cell in general population when plaintiff stated that he had a safety concern. Plaintiff states that Puckett ignored him and placed him into a cell that was occupied by inmate Harris. Puckett left the cell while plaintiff was still handcuffed, which plaintiff asserts placed him in danger because Harris was not handcuffed. Plaintiff yelled to Puckett, who returned, opened the cell door, removed the handcuffs, closed the door, and left. While no harm came to plaintiff, he alleges that Puckett ignored his safety concern and placed him in danger, all in retaliation for plaintiff previously filing grievances about his legal and personal property.

### B. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). All allegations of material fact are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, conclusory statements, not supported by factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (courts are not bound to accept as true "a legal conclusion couched as a factual allegation"). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59, 574. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

2

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Farmer*, 511 U.S. at 834; *Hearns*, 413 F.3d at 1040-41. A prisoner need not wait until he is actually assaulted to state a claim and obtain relief. *See Farmer*, 511 U.S. at 845.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline).

**C.    Analysis**

The allegations in the amended complaint fail to demonstrate that defendant Puckett was deliberately indifferent to plaintiff's safety or that he retaliated against plaintiff over the grievances. Plaintiff alleges that he had a safety concern and did not want to be on the general population yard but plaintiff provides no specific allegations about his safety concern, nor does he state that he conveyed a specific concern to Puckett to demonstrate that he was deliberately indifferent to plaintiff's safety. There is no indication that plaintiff was in danger from his cellmate or that he even knew the identity of the cellmate before he arrived. These vague allegations are insufficient under *Iqbal*. The allegations that plaintiff was momentarily handcuffed while in his cell before Puckett returned there and removed the handcuffs do not state an Eighth

3

1 Amendment claim.  While this could demonstrate negligence, that is insufficient to state a claim of

2 deliberate indifference.  *See Farmer*, 511 U.S. at 835-36.

3       Plaintiff also fails to provide any support for the allegations that Puckett's conduct was in

4 retaliation for his inmate appeals.  He presents a conclusory statement that Puckett was retaliating

5 against him, but provides no support to connect Puckett's actions to his prior conduct.  As alleged

6 in the amended complaint, Puckett was taking plaintiff to a double cell based on a classification

7 committee decision that concluded plaintiff could be transferred from Ad. Seg. to general

8 population.  While the allegations in the amended complaint fail to state a claim against Puckett,

9 plaintiff will be provided an opportunity to file an amendment as described below.[2]

10 **II.   MOTIONS FOR SUMMARY JUDGMENT**

11       Defendants Bonilla and Urena move for summary judgment and contend that there is no

12 disputed material issue of fact with regard to plaintiff's claims of retaliation, deliberate

13 indifference, or excessive force.  These defendants also argue that the excessive force claim is

14 barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) and that they are entitled to qualified

15 immunity.  Defendant Black separately moves for summary judgment arguing that there is no

16 genuine dispute regarding plaintiff's claims of deliberate indifference and retaliation and that he is

17 entitled to qualified immunity.

18     **A.  Factual Background[3]**

19       On September 8, 2011, plaintiff was transferred to SVSP.  Bonilla/Urena Motion for

20 Summary Judgment ("MSJ1") at 4.  He was initially placed into Ad. Seg. because there were no

21 beds available in compliance with his classification status.  *Id*.  After six days in Ad. Seg. he was

22 placed in general population, in a single person cell, until September 21, 2011.  Black Motion for

23 Summary Judgment ("MSJ2"), Plaintiff's Deposition ("Depo.") at 29-30.  Plaintiff was returned to

24 Ad. Seg. due to confidential information that he posed a risk to staff.  MSJ1 at 5.  On December 1,

25 2011, a classification committee determined that plaintiff could be released to general population

---

[2] The Court will defer ruling on defendant's qualified immunity argument because plaintiff will be provided an opportunity to file an amendment to clarify the substance of the allegations.
[3] The following facts, unless otherwise noted, are undisputed.

1   and double-celled with another inmate. *Id*. at 5; MSJ1, Decl. Liles, Ex. B.  At the classification

2   committee hearing, plaintiff agreed with the decision to be double-celled. Opposition to Summary

3   Judgment ("Opposition") at 9.  He stated he had no safety concerns. MSJ2, Depo. at 32.

4         After the classification committee hearing, defendant Puckett escorted plaintiff to the new

5   cell occupied by inmate Harris. Amended Complaint ("Am. Compl.") at 4.  Plaintiff had no

6   reason to believe there would be any conflict between himself and inmate Harris. MSJ2, Depo. at

7   42.  Prior to entering the cell, plaintiff had never met inmate Harris and did not know him. MSJ2,

8   Depo. at 39.  While being escorted to the new cell, plaintiff told Puckett that he had a safety

9   concern based on the general population yard. Opposition at 10.  Puckett continued to escort

10  plaintiff to the new cell and placed him in the cell. *Id*.

11        While in the double cell, plaintiff told two correctional officers that he had a housing

12  related safety concern. MSJ2 at 4.  Plaintiff's concern was reviewed and deemed unfounded by a

13  non-defendant. MSJ2, Black Decl. ¶ 4.  A copy of the classification committee chrono approving

14  the double cell was provided to plaintiff. MSJ2 at 4.

15        Later on the same day, plaintiff informed defendants Bonilla and Urena that he had a safety

16  concern, but plaintiff remained in the cell. MSJ1 at 5.  At 6:00 pm on December 1, 2011, plaintiff

17  told Urena that he had a safety concern. *Id*.  Urena inquired about the problem and plaintiff

18  responded, "I just don't feel safe in here." MSJ2, Depo. at 53.  Approximately twenty minutes

19  later Bonilla and Urena escorted plaintiff to a single holding cell. MSJ1 at 5; MSJ2, Depo. at 53.

20        Bonilla conferred with defendant correctional sergeant Black over the phone. MSJ2 at 4.

21  Black indicated that the previous shift had reviewed plaintiff's concern and concluded it was

22  unfounded. *Id*.  Because no new information had been provided, Black instructed Bonilla and

23  Urena to return plaintiff to his cell with inmate Harris. *Id*.  At approximately 6:23 p.m., Bonilla

24  and Urena escorted plaintiff back to his double cell. MSJ1 at 6.

25        Bonilla and Urena state that when they arrived with plaintiff back at the double cell, he

26  stated, "I can't go back into my cell.  It's not safe for me." MSJ1 at 6.  They state he then shook

27  his head right and left and then head-butted Urena in the chest. MSJ1, Urena Decl. ¶ 8; Bonilla

28  Decl. ¶ 8.  Bonilla then used his body weight to take plaintiff down to the floor. *Id*.  Other staff

5

1 arrived and escorted plaintiff from the building. *Id*.

2 Plaintiff disputes defendants' account of the incident. Plaintiff stated that he did not want to go back into the cell, but then Bonilla and Urena took out their pepper spray canisters and threatened to spray him and use force. Opposition at 11. Plaintiff states that Urena grabbed him by the shirt and started pulling him while Bonilla shook the pepper spray canister. *Id*. Plaintiff lowered his head towards Urena's chest to avoid being pepper sprayed, and "because of [Urena's] own action caused my (head) to go into (his vest/chest)." *Id*. Plaintiff states he did not intend to head-butt Urena. *Id*. Plaintiff states that Bonilla then slammed him to the floor which cut plaintiff's lip and knocked loose three teeth. *Id*. Plaintiff was seen by a nurse and treated with Tylenol. MSJ2, Depo. at 106.

As a result of the incident, plaintiff was found guilty of a rules violation for battery on a police officer and assessed 90 days' loss of privileges. MSJ1, Ex. D at 1. He was not assessed a loss of time credits. *Id*. As part of the loss of privileges, plaintiff was transferred back to a single cell in Ad. Seg. MSJ2 at 5.

**B. Standard of Review**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings

and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**C. Analysis**

**Deliberate Indifference to Safety**

Defendants have demonstrated that there is no genuine dispute as to any material fact with respect to plaintiff's claim that defendants were deliberately indifferent to his safety. Plaintiff has failed to articulate any substantial risk of serious harm, other than stating he had a safety concern. It is undisputed that plaintiff provided no reason why he claimed to be afraid of his new cellmate or the general population yard, and that plaintiff agreed to be double-celled at the classification hearing. It is also undisputed that plaintiff was never harmed. Simply stating he had a safety concern and that defendants failed to move him hours after he agreed to be double-celled at a classification hearing is insufficient. There are no material facts that show a sufficiently serious deprivation or that defendants were deliberately indifferent to plaintiff's safety. Plaintiff's conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). Summary judgment is granted to all defendants for this claim.

**Retaliation**

Defendants are entitled to also summary judgment on plaintiff's claim of retaliation. Plaintiff has failed to identify specific facts showing that defendants retaliated against him for filing grievances or that there is a genuine issue for trial regarding this claim. Plaintiff was placed

1   in the single cell in general population after the classification hearing, where plaintiff agreed to
2   leave Ad. Seg. and return to general population.  Plaintiff has not shown that defendants' failure to
3   override the classification hearing decision when plaintiff changed his mind was motivated by his
4   previously filed inmate grievances.  There is no indication that Bonilla and Urena were even aware
5   of plaintiff's grievances.  Bonilla and Urena took plaintiff to a single holding cell at his request
6   and only returned him to his double cell after being informed by Black that the previous shift had
7   reviewed plaintiff's safety concern and concluded it was unfounded.  Even viewing the evidence
8   in the light most favorable to plaintiff, he has failed to identify any facts showing that there is a
9   genuine issue for trial with respect to his retaliation claim.  The undisputed facts do not
10  demonstrate that failing to place plaintiff in a single cell was because of his prior protected
11  conduct.  Summary judgment is granted to all defendants for this claim.

**Excessive Force and Qualified Immunity[4]**

i.   **Legal Standard**

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (omission in original) (internal quotation marks omitted).  Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the deliberate indifference standard is inappropriate. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  Instead, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id*. at 6-7; *Whitley*, 475 U.S. at 320-21.

In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see also Spain*

---

[4] Because the Court has not found a constitutional violation with respect to the deliberate indifference and retaliation claims, it will not address the qualified immunity argument for these claims.

8

*v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation); *see, e.g., Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013) (reversing district court's grant of defendants' motion for summary judgment because plaintiff's evidence that guards emptied two pepper spray canisters at him when he put his hands on his cell's food port opening raised a disputed issue of material fact regarding whether he posed a threat that justified defendants using pepper spray); *Watts v. McKinney*, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that kicking the genitals of a prisoner who was on the ground and in handcuffs during an interrogation was "near the top of the list" of acts taken with cruel and sadistic purpose to harm another); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (pepper spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'". *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

**ii.  Discussion**

It is undisputed that Bonilla and Urena had escorted plaintiff back to his cell at which point plaintiff kept stating that he did not want to return to the cell. Plaintiff states that Urena then

9

pulled him by the shirt to place him into the cell. It is undisputed that plaintiff lowered his head towards Urena's chest, and either deliberately or accidentally struck him in the chest with his head. It is undisputed that Bonilla then took plaintiff to the ground, during which plaintiff was injured. There are no allegations that Bonilla, Urena or any of the other correctional officers who responded used any additional force on plaintiff.

Defendants argue that only minimal force was used to take plaintiff to the ground after the contact with Urena and that plaintiff suffered de minimis injuries. Defendants argue that the minimal force used was for the purpose of maintaining discipline after the head-butt into Urena's chest, and there is no evidence that it was for the malicious and sadistic purpose of causing harm. They argue that it was a proportionate use of force. The undisputed facts support this argument.

Even if the Court were to find that excessive force was used and construing the evidence in plaintiff's favor, defendants would be shielded by qualified immunity. Assuming there was a constitutional deprivation, it would not be clear to a reasonable officer that his conduct was unlawful in this situation. Plaintiff concedes that he head-butted Urena in the chest. While plaintiff states this was an accident and even if the amount of force was minor and plaintiff was protecting himself from the possibility of being pepper sprayed, which never occurred, Bonilla only observed plaintiff strike Urena in the chest. As a result, Bonilla tackled plaintiff, which prevented any other possible assault.

Aside from the tackle, no other force was used on plaintiff. Even if this was a constitutional deprivation, it would not be clear to Bonilla that the force used to subdue plaintiff was excessive, as he was aiding Urena. The officers could not have known that such a minimal use of force to subdue plaintiff in response to his head-butting of another correctional officer would violate plaintiff's constitutional rights. Therefore, defendants are entitled to qualified immunity.[5]

### III. MISCELLANEOUS MATTERS

Summary judgment is granted for defendants Bonilla, Urena, and Black, and they are

---

[5] As the Court has found that these defendants are entitled to qualified immunity, the *Heck* argument will not be addressed.

10

dismissed from this action with prejudice. Defendant Puckett's motion to dismiss is granted but plaintiff will be provided an opportunity to file an amendment. Plaintiff may not file a second amended complaint; rather, he may file a brief amendment to the operative amended complaint solely regarding defendant Puckett and the allegations of deliberate indifference and retaliation. Plaintiff may not add new defendants or new claims, and the Court will not review any allegations against the defendants who have been dismissed with prejudice. The amendment must be filed within **twenty-eight (28) days** of the date of this order. Failure to file an amendment will result in the dismissal of the claims against Puckett.

Plaintiff has also requested the appointment of counsel. The Ninth Circuit has held that a district court may ask counsel to represent an indigent litigant only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Plaintiff has presented his claims adequately, and the issues are not complex. Therefore, the motion to appoint counsel is denied.

## IV.   CONCLUSION

1.   The motion to dismiss (Docket No. 38) is **GRANTED.** Plaintiff may file an amendment to the current amended complaint as discussed above, within **twenty-eight (28) days** of the date this order is filed. Failure to file an amendment within the designated time will result in the dismissal of this defendant.

2.   The motions for summary judgment (Docket Nos. 51, 52) are **GRANTED**. Defendants Bonilla, Urena, and Black are dismissed from this action with prejudice.

3.   Plaintiff's motion for service (Docket No. 59) and motion to appoint counsel (Docket No. 62) are **DENIED**.

**IT IS SO ORDERED**.

Dated: March 9, 2015

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN LEE MATTHEWS,<br><br>    Plaintiff,<br><br>    v.<br><br>E. BLACK, et al.,<br><br>    Defendants. | Case No. 13-cv-02760-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/9/2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ivan Lee Matthews ID: H69338
California Correctional Institution Housing 4-A-6-A-#101
P.O. Box 1902
Tehachapi, CA 93581

Dated: 3/9/2015

Richard W. Wieking
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO